SPURLOCK vs. WEST.

1. It is the province of the jury to decide upon the credibility of conflicting witnesses; and where the verdict was not only sustained by the evidence but by the overwhelming preponderance thereof, it was error to grant a new trial on the ground that the verdict was contrary to the evidence.

2. While the declaration in this case was not drawn with technical accuracy, yet it set forth fully and distinctly the cause of action, and was not demurrable.

3. The amendment to the declaration allowed in this case introduced no new cause of action, but was merely an amplification of the original cause of action set forth in the declaration. At all events, the declaration was sufficient without the amendment.

4. No request was made of the court to give in charge the matters for failing to give which exception was taken.

5. Newly-discovered testimony as a ground for new trial will not be considered with favor where no diligence to procure the testimony before the trial is shown.

January 9, 1888.

New trial. Pleadings. Amendment. Charge of court. Evidence. Before Judge ADAMSON. City court of Carrollton. February term, 1887.

The declaration alleged that West was indebted to Spurlock in the sum of $150, besides interest from the 6th day of December, 1886, at the legal per cent., under the following circumstances:

On the 10th day of November, 1878, petitioner and said West associated themselves together to run a saw-mill and gin business in the town of Carrollton. In the execution of this project, they proposed to purchase the property in said town known as the Camp property, which then consisted of a town lot with a mill-house and other houses thereon, the mill-house containing the usual fixtures necessary for the running of a mill to grind corn. Said West proposed to petitioner that of the two he, said West, was the best person to make the trade with the Camps, to-wit, Eugene and George Camp, for said property, as he was better acquainted with them than petitioner. Previously

to said conversation agreeing as to who should purchase said property, that is, which one of the persons aforesaid, petitioner and said West had agreed among themselves to give as much as $1,400.00 for said property, but of course to get it for as much less as possible. Petitioner, having the utmost good faith and implicit confidence in West as his partner, and with not the remotest idea that West would perpetrate fraud upon him, consented for West to purchase the property aforesaid from the Camps for said firm, composed of your petitioner and West, under the firm name of West & Spurlock, each one of the persons to have an equal interest in the business that the firm might transact, and to share equally losses. In pursuance of said agreement as to which one of the partners should make the trade for the firm for the property from the Camps, on the 6th day of December, 1878, West went forward and purchased the said property from the Camps, and after having done so, immediately reported to petitioner that he had agreed to give the Camps for said property, and had closed the trade at and for, the sum of $1,400.00, which was the best he could do. With this, at the time, petitioner was perfectly satisfied, thinking that West had told him the truth and had acted in the utmost good faith, and petitioner, having implicit confidence in him, made no inquiry as to the truth of said report, and on the day the trade was made, paid to the Camps, in the presence of West, $700, being his half of the $1,400.00 which was to be paid for the property as reported by West. At the time said payment was made by petitioner, no explanation, demurrer or objection was made by either the Camps or West. At said time West did not pay his half, neither did petitioner see him pay the Camps any money at all; but supposes that he did pay them some money, because the Camps subsequently deeded the property to the firm. Petitioner never suspected any fraud or unfair dealing upon the part of West until the first of December, 1885, when he learned that West had not paid the Camps the

$1,400.00 as reported by him, but had paid them only $1,100.00, of which West had paid only $400. Under the premises aforesaid, petitioner was liable for only $550. Upon this information coming to petitioner prior to the bringing of this suit, he demanded of West $150, besides interest from the day he paid the $700 aforesaid, and which sum so demanded was in excess of what he should have paid had West properly represented the facts to petitioner. West refused and still refuses to pay the sum demanded, or any part thereof, etc.

The suit was brought in 1886. The amendment alluded to in the opinion was as follows:

"The defendant, T. H. West, of the $1,100 paid for the property, only paid the sum of $400, and in fraud of plaintiff's right, kept the same concealed from the knowledge of plaintiff until discovered by plaintiff, as hereinbefore set out, and thus debarred plaintiff of his action until the time of its commencement, and in this way committed a fraud on plaintiff."

All other material facts are stated in the opinion.

OSCAR REESE and REID & GROW, for plaintiff.

GORDON & BROWN and MERRELL & COLE, for defendant.

BLANDFORD, Justice.

Spurlock sued West in the city court of Carrollton. In his declaration he alleged that he and West had jointly purchased a certain tract of land, known as the Mill property, and situated in the town of Carrollton, from two men named Camp; that the trade was made by West, West having insisted that he should be allowed to make it, as he was better acquainted with the Camps than Spurlock was, and that he was going to get the property as cheaply as he could; each was to pay half of the purchase money. He alleged that West represented to him that he had given $1,400 for the property, when in fact he had only given $1,100; that he (Spurlock) paid $700, his half of the

$1,400, which was $150 more than he was bound to pay under the arrangement he had made with West; and for this sum of $150 the suit was brought. The jury found for Spurlock, and West made a motion for a new trial, which was granted. To this grant of a new trial Spurlock excepted, and brings the case here for review.

1. On the trial of the case, Spurlock testified to the fact alleged in the declaration, that under his arrangement with West, the land was to be purchased for them jointly. West denied this, and testified that he was to buy the land at whatever price he could buy it for, and Spurlock was to pay him $700 for a half-interest. He also testified that he swapped for this property a place in Carroll county, known as the Pitts place. The consideration stated in the deed is $1,400, and it is shown by the Camps that West requested, when they were going to the court-house to execute the deed, that the consideration should be so stated.

The Camps also testified that it was not true that they took the Pitts place from West in exchange for this property, but that he paid them $400 in cash, and gave his note for the remainder, one for $400 and the other for $300, making altogether the sum of $1,100. It was further shown, by the testimony, that West gave a bond for titles to the Pitts place to the Camps, conditioned to make title when two $500 notes made by Camp to him were paid. West testified that these two $500 notes were given to him by the Camps, not for the Pitts place, but for a loan of $800. The Camps denied this. They said that the two $500 notes were given for the Pitts place, and that they surrendered to West the $300 note which he had given them for the mill property. They were to pay $1,300 for the Pitts place; they paid $300 to West, and this $300 note which he had given to them, and they traded off the other $400 note. Looking at the facts of this case, it is very strange that if he (West) made an exchange of the Pitts place for the mill property, he should have given his

v 80-20

bond for titles to the Pitts place when the two $500 notes were paid. He ought to have made a deed to the place. He was paid for it, according to his own theory, and these two outstanding $500 notes were given for the loan of $800 in money, which had nothing to do with the purchase of the Pitts place, or the purchase of the mill property, according to his theory. But the fact that he gave this bond to make title when the two $500 notes were paid, is against his theory and his statement as to the truth of the case. It is the peculiar province of the jury to weigh the testimony of the witnesses, and to pass upon their credibility. They weighed the testimony of this, witness, and they found in favor of Spurlock. For a court to intervene upon the ground that the jury had given credit to the wrong witness, would be, it seems to me, to do away with the trial by jury entirely. There would be no use for a jury; it would be an utterly useless piece of machinery. The verdict of the jury in this case is not only sustained by the testimony, but by the overwhelming preponderance of the evidence. That being true, we conclude that the court below had no discretion to grant a new trial in this case on the ground that the verdict was not sustained by the evidence.

2. There are some special grounds in the motion for a new trial, one of which is that the declaration is not sufficient, and that the court erred in overruling the demurrer thereto. We think he did right in overruling the demurrer. It is true that the declaration is not very technical, but according to the rules of pleading in this State, it sets forth fully and distinctly the plaintiff's cause of action.

3. There was also an amendment to the declaration, which was objected to on the ground that it introduced a new cause of action. We think the court did right to overrule that objection. The amendment introduced no new cause of action, but was merely an amplification of the original cause of action as set forth in the declaration. But at all events, the declaration was sufficient without the amendment.

4. There are complaints that the court failed to give certain matters in charge to the jury, but the record shows that the court was not requested to charge in the way and manner desired.

5. There is a further ground as to the newly-discovered evidence of three persons. They proposed to show by two of these witnesses that the Camps went into possession of the Pitts place shortly after the trade for the mill place, in order to sustain West's theory that the mill place was purchased by exchanging for it the Pitts place; and by the other witness they proposed to show that two of Spurlock's witnesses and the two Camps admitted to this witness that they had given the mill place for the Pitts place. These witnesses all resided in the county, and were known to West. Two of them lived on the Pitts place, and they had worked for West a number of years. He could not have been ignorant of what they knew about the case. He showed no diligence whatever in procuring their testimony before the trial of the case; and we think that in all cases it should appear that some amount of diligence was exercised to procure the testimony of the witnesses before the trial. That is the time for diligence to be shown. And wherever they fail to show that they made an effort to discover the testimony before the trial, this ground of the motion will not be very favorably entertained by this court.

We do not think the judge ought to have granted the motion for a new trial, and we reverse the judgment.

Judgment reversed.